# Exhibit 2

# The CFTC's Role in Monitoring Virtual Currencies

*NOTE: This CFTC report on virtual currency monitoring was generated in compliance with House Report 116-107, The Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Bill, 2020.*

## House Report Language

The advent of virtual currency markets has presented several new challenges for the Commission in its efforts to carry out its mission. Each virtual currency derivatives contract currently ties its price in some way, through various settlement processes, to prices of virtual currency on certain cash market platforms. This underlying virtual currency cash market is relatively nascent, and the platforms operating in the cash market remain largely unregulated, with the Commission having only limited enforcement authority over the cash market. Those features of the underlying cash market platforms have led the Commission to note multiple risks to the markets. Therefore, the Committee encourages the Commission's ongoing efforts, in coordination with other financial regulators such as the Securities and Exchange Commission, to continue monitoring virtual currencies, including Bitcoin futures contracts, and to detect, investigate, and prosecute fraud and manipulation in these markets. The Commission is directed to prepare a report on how to better protect virtual currency investors and promote American competitiveness in this evolving global marketplace. This report should include, but is not limited to a discussion of how to protect investors against fraud and manipulation involving virtual currency. This report is to be made available on the Commission website within 270 days of the date of enactment of this Act.

## The CFTC's Mission

The mission of the CFTC is to promote the integrity, resilience, and vibrancy of the U.S. derivatives markets through sound regulation. We do this by:

- Protecting market participants against fraud, price manipulations, and abusive trading practices.
- Ensuring the financial integrity of the clearing process.
- Promoting transparency, by conducting research on economic issues related to the futures and options markets, and sharing data about market activity.
- Encouraging market efficiency through principles-based regulation.
- Working with the exchanges, self-regulatory organizations, and other governmental and international organizations to enforce against instances of manipulative or disruptive market activity.

Under the authority of the Commodity Exchange Act (CEA), the CFTC writes rules and supervises market activity and market participants—including exchanges, clearing organizations, large traders, and the companies and individuals who handle customer funds or offer trading advice. The agency also investigates and brings cases for

violations of the CEA and Commission regulations. And, the CFTC educates market customers about their rights, protections, and how to spot, avoid, and report fraud.

### **CFTC Oversight of Virtual Currencies**

The Commission and federal courts have found that virtual currencies are commodities under the CEA. While its regulatory oversight authority over commodity cash markets is limited, the CFTC maintains general anti-fraud and manipulation enforcement authority over virtual currency cash markets as a commodity in interstate commerce.

The Commission has not formally defined virtual currency via regulation. The Commission, however, adopted a broad definition of the term "virtual currency" for purposes of its March 2020 Final Interpretive Guidance for Retail Commodity Transactions Involving Certain Digital Assets.

In the context of that interpretation, virtual currency was referenced as:

- a digital asset that encompasses any digital representation of value or unit of account that is or can be used as a form of currency (*i.e.*, transferred from one party to another as a medium of exchange);
- may be manifested through units, tokens, or coins, among other things; and
- may be distributed by way of digital "smart contracts," among other structures.

However, the Commission noted that it did not intend to create a bright line definition given the evolving nature of the commodity and, in some instances, its underlying public distributed ledger technology ("DLT" or "blockchain").

For purposes of below, the term "digital assets" encompasses the term "virtual currency." Many of the Commission's primers and advisories can be found on cftc.gov/Bitcoin and other areas of the agency's website.

### **The CFTC's Embrace of Innovation**

The Commission recently released its Strategic Plan for 2020-2024. Among the five strategic goals, the Commission focused on encouraging innovation and enhancing the regulatory experience for market participants at home and abroad. The strategic plan commits the Commission to addressing both the risk and opportunities arising from "21st century commodities." The Commission will develop a holistic framework to promote responsible innovation in digital assets. The final 2020-2024 Strategic Plan is available here.

Upon taking office one year ago, the Chairman increased his focus on innovation in the derivatives markets. Soon after starting, he elevated LabCFTC (the Commission's innovation arm) to an office with the Director reporting directly to the Chairman. This enabled innovation throughout the Commission, including the focus on digital assets.

2

LabCFTC also hosts an annual conference called Fintech Forward.  This conference, held in 2018 and 2019, included panel discussions on a wide range of topics:  artificial intelligence in the 21st century marketplace, digitization and custody, big data and cloud computing, and global perspectives on fintech issues.  In light of the pandemic, LabCFTC shifted the format of this conference for 2020 to be an Empower Innovation Series this Fall.  Here, the focus will be on technology and innovation in light of the pandemic, how regulators are looking at innovation, and the role technology and innovation will play for the future of finance.

**Over the past year, the Commission has focused on digital assets and their role in the derivatives markets. This includes:**

- **Adopting Interpretive Guidance for the Actual Delivery of Virtual Currency:** On March 24th 2020, the Commission voted unanimously to approve final interpretive guidance concerning retail commodity transactions involving certain digital assets. Specifically, the guidance clarifies the CFTC's views regarding the "actual delivery" exception to Section 2(c)(2)(D) of the CEA in the context of virtual currencies.  In sum, the final guidance provides the Commission's views on an exception to CFTC regulations involving certain leveraged, margined, or financed virtual currency transactions offered to U.S. retail investors.  The final guidance provides a central interpretation of what this concept of "actual delivery" means and several examples of situations that demonstrate or do not demonstrate actual delivery in the Commission's view.
- **The CFTC's response to the Telegram case:**  In February, 2020, CFTC was asked to comment on the *SEC v. Telegram* case with regard to the commodity and security definition for the Telegram's "Gram" token.  In response to the Judge's request for comment from the Commission, the Office of General Counsel (OGC) issued a letter that defined commodities and the Commission's jurisdiction. The letter stated that blockchain-based digital assets are commodities and acknowledged that these digital assets may also be securities but declined to offer analysis on that point as such analysis is within the purview of the SEC.  CFTC did not comment on the merits of the case, nor take a position on whether GRAM was a security or a commodity.[1]

**Protecting and Educating**

- **CFTC Enforcement Activities:**  The Commission has recently announced a number of enforcement actions related to fraud and manipulation in virtual currency markets. Below is a compilation of cases from the past year. A complete list can be found here.

---

[1]:  Robert A. Schwartz, Deputy General Counsel, Litigation, Enforcement & Adjudication, Commodity Futures Trading Comm'n, Letter to Judge Castel, Re: *SEC v. Telegram Group, Inc., et al.*, No. 1:19-cv-09439 (PKC) (S.D.N.Y. Feb. 18, 2020), ECF No. 203.

3

- - [CFTC Sanctions Two Firms Offering Digital Asset-Based Swaps for Illegal Off-Exchange Trading and Registration Violations](#)
  - [CFTC Files Charges in $20 Million International Binary Options and Digital Asset Fraud Scheme](#)
  - [CFTC Charges Florida Man and His Companies in Fraudulent Forex and Digital Asset Scheme](#)
  - [CFTC Charges Colorado Resident with Fraud in Digital Asset-Linked Ponzi Scheme](#)
  - [CFTC Charges Foreign Trading Platform for Failing to Register with the CFTC](#)
  - [Federal Court Permanently Enjoins Defendants and Orders Them to Pay Penalties and Restitution for Bitcoin Solicitation Fraud, Impersonating a CFTC Investigator, and Sending Forged CFTC Documents](#)
  - [CFTC Charges Company and its Principal in $147 Million Fraudulent Bitcoin Trading Scheme](#)
  - [Foreign Trading Platform and Its CEO to Pay $990,000 for Illegal Bitcoin-Related Transactions with U.S. Customers](#)
  - [CFTC reinstates TeraExchange, LLC as Swap Execution Facility](#)

- **Education:** The Commission has increased its internal training efforts on various virtual currency topics: bitcoin, ether, blockchains, zero knowledge proofs, and forks of virtual currency blockchains. This internal education enhances current regulatory staff know-how – enabling more innovation in the regulatory process.

- **CFTC Customer Advisories on Virtual Currencies:** The Office of Customer Education and Outreach have developed several customer advisories related to digital assets and virtual currency. These advisories provide tips customers can take to avoid fraud or other problems.

  - [Use Caution When Buying Digital Coins or Tokens](#)
  - [Beware Virtual Currency Pump-and-Dump Schemes](#)
  - [Beware of "IRS Approved" Virtual Currency IRAs](#)
  - [Risks of Virtual Currency Trading](#)
  - [Customer Advisory: Beware of Fee Scams Targeting Workers Sidelined by COVID-19](#)
  - [Investor Alert: Watch Out for Fraudulent Digital Asset and "Crypto" Trading Websites](#)
  - [Customer Advisory: There's Nothing to Like about Scammers on Social Media](#)

  In addition, the [cftc.gov/check](#) web page includes information on how to check the registration of virtual currency over-the-counter spot trading websites using the money service businesses [(MSB) Registrant Search](#) operated by the Financial Crimes Enforcement Network and the [Nationwide Multistate Licensing System (NMLS)](#) operated by the Conference of State Bank Supervisors. This information is

4

included with other registration FAQs and information that encourage customers to verify entity registration before committing funds to a trade or investment.

**Overview of Prior CFTC Efforts**

The CFTC has been focused on virtual currencies for some time, spanning multiple agency heads. These efforts span prior enforcement actions, LabCFTC policy primers, Commission requests for information (RFIs), Staff Advisories, and resources developed by the Office of Public Affairs.

**Enforcement Actions:** The CFTC began filing cases involving virtual currencies as early as 2015. These cases include:

- [CFTC Orders Bitcoin Options Trading Platform Operator and its CEO to Cease Illegally Offering Bitcoin Options and to Cease Operating a Facility for Trading or Processing of Swaps Without Registering](#)
- [CFTC Settles with TeraExchange LLC for Failing to Enforce Prohibitions on Wash Trading and Prearranged Trading in Bitcoin Swap](#)
- [CFTC Orders Bitfinex to Pay $75,000 for Offering Illegal Off-Exchange Financed Retail Commodity Transactions and Registration Violations](#)

- **[LabCFTC Primer on Virtual Currencies](#):** In October 2017, LabCFTC released a primer on Virtual Currencies. The primer was aimed at the general public. The primer provided an overview of what virtual currency is, the role of the CFTC in virtual currency spot and derivative markets, as well as an overview of the risks associated with Virtual Currencies.

- **[CFTC Backgrounder on Oversight of Virtual Currency Futures Markets](#):** In January 2018, the Office of Public Affairs released a backgrounder on the Commission's oversight of virtual currency futures markets. The backgrounder provided clarity regarding federal oversight of and jurisdiction over virtual currencies; the CFTC's approach to regulation of virtual currencies; the self-certification process generally, as well as specifically regarding the self-certification of new contracts for bitcoin futures products by DCMs; background on the CFTC's "heightened review" for virtual currency contracts; and a discussion of the constituencies the CFTC believes could be impacted by virtual currency futures.

- **[RFI on Crypto-asset Mechanics and Markets/Ether Commodity Determination](#):** In December 2018, the CFTC released a Request for Information (RFI) seeking input about the virtual currency marketplace, particularly related to Ether and the Ethereum network. The RFI specifically sought public comments on a range of questions related to the underlying technology, opportunities, risks, mechanics, use cases, and markets, related to Ether and the Ethereum Network. The responses to the RFI did not find opposition to Ether-related derivatives. Many commentators noted that Ether derivatives could have a positive impact on Ether and the Ethereum

5

Network.[2]  In October 2019, CFTC Chairman Tarbert noted that, in his view, Ether is a commodity.[3]  Since this announcement, CFTC has begun to hear from interested stakeholders about the potential to initiate a listed derivatives contract based on Ether.

- **DMO and DCR Staff Advisory on Virtual Currency Derivative Product Listings**: In May 2018, DMO and DCR issued a joint staff advisory (No. 18-14) to exchanges and clearinghouses providing guidance for listing virtual currency derivative products.  The advisory is intended to clarify CFTC staff priorities and expectations in its review of new cash-virtual currency derivatives to be listed on a DCM or SEF, or to be cleared by a DCO. Highlighted in the advisory are key areas that require particular attention in the context of listing a new virtual currency derivatives contract.  These include:

    - Establishing enhanced market surveillance processes (such as having formal information sharing agreements with spot market platforms that are used to form settlement prices).
    - Coordinating with CFTC surveillance staff.
    - Setting large trader reporting levels equivalent to 5 BTC.
    - Undertaking outreach to member and market participants to address concerns on the product.
    - Coordinating with CFTC staff on a review of the DCO's risk management policies for the clearing of virtual currency derivatives.

---

[2] *See* https://comments.cftc.gov/PublicComments/CommentList.aspx?id=2941.
[3] "It's my conclusion as Chairman of the CFTC that ether is a commodity and therefore would fall under our jurisdiction."  https://www.cftc.gov/PressRoom/PressReleases/8051-19.