UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUIGI MARRUSO,<br><br>                Plaintiff,<br><br>    v.<br><br>ROBERT W MONSTER, et al.,<br><br>                Defendants. | CASE NO. C24-1455-KKE<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFAULT JUDGMENT |

      Plaintiff Luigi Marruso, through counsel, sues Defendants Robert Monster, Epik Inc. ("Epik"), and Masterbucks, LLC ("Masterbucks") under state and federal laws to recover assets trapped in electronic wallets controlled by Defendants. The Court denies default judgment as to Plaintiff's breach of contract, breach of fiduciary duty, and RICO claims, but finds that Plaintiff is entitled to default judgment as to all Defendants on his fraudulent misrepresentation, unjust enrichment, conversion, Consumer Protection Act, and replevin claims, and is entitled to judgment in the amount of $1,368,217.76 and the return of 5.18836095 in Bitcoin ("BTC").

# I. BACKGROUND

A.   **Relevant Facts**[1]

Epik "is a delinquent Washington corporation" that "purports to act as an escrow agent in connection with the sale of domain names." Dkt. No. 1 ¶¶ 3, 19. Masterbucks is an administratively dissolved Wyoming limited liability company that "holds itself out as an online withdrawal dashboard 'designed specifically for domain name sellers.'" *Id.* ¶¶ 8–9. Defendant Monster owns and/or operates Epik and Masterbucks. *Id.* ¶¶ 5, 11.

Plaintiff created the following four accounts with Epik: MultiBusiness, Bitextreme, domainsales@domainempire.com ("Domain Empire"), and admin@businessweb.com ("Business Web"). *Id.* ¶¶ 34, 45, 51, 61. Once Plaintiff created an account with Epik, Epik and Masterbucks created "Masterbucks accounts using the same username and password." *Id.* ¶ 33.

**MultiBusiness Accounts.**  Through his MultiBusiness Epik account, Plaintiff sold a portfolio of domains for "over $3,000,000 [and] retained funds within the Epik/Masterbucks account for potential future use." *Id.* ¶¶ 33–34. On November 3, 2022, Epik emailed Plaintiff a notice of termination of the Customer Account Balance Accrual Agreement and stated "Epik has converted the balance of your account into In-Store Credit[.]" *Id.* at 21. The email listed the In-Store credit balance as $1,072,687.81 and stated "We will continue to accept Customer's [In-Store Credit] up to the current balance thereof as credit toward Customer's purchase of products and services provided by Epik[.]" *Id.* As of April 5, 2023, Plaintiff had a balance of $1,079,052.50 in In-Store Credit in his Epik account. *Id.* ¶ 40, *id*. at 28. On April 6, 2023, Defendants transferred the In-Store Credit from Plaintiff's MultiBusiness Epik account to his MultiBusiness Masterbucks

---

[1] The Court takes Plaintiff's well-pleaded factual allegations as true. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

ORDER GRANTING IN PART AND DENYING IN PART DEFAULT JUDGMENT - 2

account. *Id.* ¶ 42, *id.* at 28, 30. "Plaintiff has demanded return of the $1,079,052.50 and Defendants have refused to return the funds." *Id.* ¶ 44.

**Bitextreme Accounts.** On November 3, 2022, Epik emailed Plaintiff regarding his Bitextreme account, stating "Epik has converted the balance of your account into In-Store Credit[.]" *Id.* at 34, *id.* at 34. Defendants took 1.2314666 BTC in the Bitextreme Masterbucks account and transferred it to $24,823.90 USD. *Id.* ¶ 52, *id.* at 37, 39. Defendants then took that amount, with the $12,526.09 that was in the Bitextreme Masterbucks account and transferred the total to In-Store Credit in the Bitextreme Epik account. *Id.* at 41. As of April 2023, Plaintiff's Bitextreme Epik account reflected $36,003.00 in In-Store Credit. *Id.* ¶ 57, *id.* at 43. Plaintiff alleges that on April 6, 2023, Defendants transferred the In-Store Credit from Plaintiff's Bitextreme Epik account to his Bitextreme Masterbucks account. *Id.* ¶ 59, *id.* at 39. "Plaintiff has demanded return of the $36,003.00 and Defendants have refused to return the funds." *Id.* ¶ 60.

**Domain Empire Accounts.** On November 3, 2022, Epik transferred $253,162.26 out of Plaintiff's Domain Empire Masterbucks account and into the corresponding Epik account in the form of In-Store Credit. *Id.* ¶ 62; *id.* at 45, 47. On April 6, 2023, "Defendants then transferred the $253,162.26 back to the [Domain Empire] Masterbucks account." *Id.* ¶ 66; *id.* at 45, 47. "Plaintiff has demanded return of the $253,162.26 and Defendants have refused to return the funds." *Id.* ¶ 67.

**Business Web Accounts.** Through his Business Web Epik account, Plaintiff sold a domain in August 2022 and the sales funds were converted to 5.18836095 BTC and held in his Masterbucks account. *Id.* ¶ 45, *id.* at 32. In November 2022, Plaintiff tried to withdraw the BTC, the request remains pending, and "Plaintiff has demanded return of the 5.18836095 BTC and Defendants have refused[.]" *Id.* ¶¶ 47–50.

ORDER GRANTING IN PART AND DENYING IN PART DEFAULT JUDGMENT - 3

Plaintiff alleges the transfers of "USD and/or BTC from Masterbucks to Epik, or from Epik to Masterbucks, were never authorized by Plaintiff." *Id.* ¶ 68.

**B.     Procedural History**

Plaintiff filed this case against Epik, Masterbucks, and Monster on September 12, 2024. Dkt. No. 1. No Defendants appeared. After the Court raised concerns with Plaintiff's service on Defendants (Dkt. Nos. 16, 19), which Plaintiff addressed (Dkt. Nos. 17, 20), the Court ordered the Clerk to enter Defendants in default and for Plaintiff to send the entry of default to Defendants by certified mail (Dkt. Nos. 21, 22). Plaintiff provided proof of such service (Dkt. No. 24) and now moves for entry of default judgment (Dkt. No. 28).

## II.     ANALYSIS

**A.     Jurisdiction**

Before entering default judgment, the Court must confirm that it has both subject matter and personal jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 because Plaintiff alleges RICO Act violations. 18 U.S.C. § 1964(c). The Court has supplemental jurisdiction over his state law claims which form the "same case or controversy[.]" 28 U.S.C. § 1367.

The Court has personal jurisdiction over Monster because he resides in this district. Dkt. No. 1 ¶ 3. The Court has personal jurisdiction over Epik because its principal office is in this district. *Id.* ¶ 4. The Court also has personal jurisdiction over Masterbucks because Plaintiff alleges Masterbucks "purposefully direct[ed] [its] activities or consummate[d] some transaction with the forum or resident thereof; or perform[ed] some act by which [it] purposefully avail[ed]

[itself] of the privilege of conducting activities in the forum" and that the claim "arises out of or relates to [its] forum-related activities[.]" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Masterbucks's alleged practice of transferring assets to and from Epik, which is based in Washington, are intentional acts directed at Washington and Plaintiff's claims arise from those acts. The Court therefore has personal jurisdiction over each Defendant.

**B.** **Legal Standard**

A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored[,]" because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment). At the default judgment stage, courts take "the well-pleaded factual allegations" in the complaint "as true[,]" but "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). When considering whether to exercise discretion in entering a default judgment, courts may consider various factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

**C.** **Plaintiff Is Entitled to Default Judgment on Some Claims.**

The Court will analyze each *Eitel* factor starting with the merits of the claims and sufficiency of the complaint because those factors determine some claims. *See Gulliver's Tavern, Inc. v. Foxy Lady Inc.*, No. 3:23-CV-05027-TMC, 2024 WL 3992483, at *3 (W.D. Wash. Aug. 29, 2024) (denying motion for default judgement and only addressing second and third *Eitel*

ORDER GRANTING IN PART AND DENYING IN PART DEFAULT JUDGMENT - 5

factors); *Cripps v. Life Ins. Co. of N. America*, 980 F.2d 1261, 1267–68 (9th Cir. 1992) (reversing a default judgment entered on a legally insufficient claim).

    1. <u>The merits of the claim and the sufficiency of the complaint support default judgment for certain claims.</u>

        a.    *Plaintiff sufficiently pleads a fraudulent misrepresentation claim against all Defendants.*

Plaintiff brings a claim of fraudulent misrepresentation, alleging that Defendants represented to him that Epik would hold proceeds from domain sales in escrow, but in reality, Defendants used the funds that Plaintiff and other customers deposited into escrow accounts to run their own operations. Dkt. No. 1 ¶¶ 18–19, 26–29, 72, 76–87. To support default judgment on a claim for fraudulent misrepresentation, Plaintiff must allege:

> (1) representation of an existing fact, (2) materiality, (3) falsity, (4) the speaker's knowledge of its falsity, (5) intent of the speaker that it should be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7) plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely upon the representation, and (9) damages suffered by the plaintiff.

*Emerson v. Island Cnty.*, 371 P.3d 93, 100 (Wash. Ct. App. 2016). Because this claim sounds in fraud, Plaintiff must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The complaint must identify "what is false or misleading about [the] statement, and why it is false." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (citation modified). However, "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify *false statements* made by each and every defendant." *Id.* at 764 (emphasis in original).

As detailed below, Plaintiff has asserted sufficient facts to support this claim and thus is entitled to default judgment as to fraudulent misrepresentation.

(i) Plaintiff sufficiently pleads Defendants' material false representation.

The Court finds that Monster, Epik, and Masterbucks each made material false representations to Plaintiff in connection with the alleged escrow scheme. Plaintiff alleges that Defendants collectively "represented to Plaintiff that Epik would serve as an escrow agent and maintain Plaintiff's sales proceeds in escrow accounts, to be used at Plaintiff's discretion" and "that Plaintiff should keep the balances in the escrow accounts, as Plaintiff would earn interest on the balances." Dkt. No. 1 ¶ 77. Individually, Epik "purport[ed] to act as an escrow agent." *Id.* ¶ 19. Plaintiff also alleges that "[a]fter plaintiff was unable to withdraw Plaintiff's rightful funds, Defendants together represented [] that the issues with the accounts would be fixed and that Plaintiff would receive his money." Dkt. No. 1 ¶ 85. Individually, "Monster made false representations" "promising to repay funds[.]" *Id.* ¶ 95(a)(ii). Following the unauthorized transfer from Plaintiff's Epik account to Plaintiff's Masterbucks account, the Masterbucks account ledger represented to Plaintiff that he had an account balance of $1,079,052.50. *Id.* ¶¶ 40–44.

A fact is "material" if it is one "to which a reasonable [person] would attach importance in determining his or her choice of action in the transaction in question." *Guarino v. Interactive Objects, Inc.*, 86 P.3d 1175, 1185 (Wash. Ct. App. 2004). Defendants' representations about their escrow services and interest rates were material because they induced Plaintiff to choose to establish accounts with Defendants, to deposit funds into those accounts, and to keep large balances with Defendants. *See Gray v. Wikstrom Motors*, 128 P.2d 490, 493 (Wash. 1942) (representation about price of car was material because it induced plaintiff to purchase a vehicle and trade in his own). Monster's representation that Plaintiff would receive his funds, and Masterbucks' representation that Plaintiff's account value was $1,079,052.50 were similarly

material because they ostensibly led Plaintiff not to take additional action—including bringing this lawsuit—sooner.  Given Plaintiff's allegations that he lost access to his funds in the Epik and Masterbucks accounts and that Monster has "acknowledged the debt owed to Plaintiff but has failed to repay it," (Dkt. No. 1 ¶ 69) at this stage, Plaintiff has also sufficiently pleaded falsity as to Epik's, Monster's, and Masterbucks' representations.

(ii) Plaintiff sufficiently pleads Defendants' knowledge and intent, and his ignorance.

While the circumstances constituting fraud must be stated with particularity, Plaintiff need only allege knowledge and intent "generally."  Fed. R. Civ. P. 9(b).  Here, Plaintiff alleges Defendants knew their representations were false, and intended for Plaintiff to rely on them.  Dkt. No. 1 at ¶¶ 80, 83.  Given Plaintiff's additional factual allegations around: 1) the nature of Defendants' representations about their services, 2) Defendants providing Plaintiff with escrow and domain sales accounts, 3) the unauthorized transactions that took place within the accounts, 4) Plaintiff's inability to recoup his funds, and 5) Monster, Epik, and Masterbucks spending Plaintiff's funds to further their own interests, it is plausible that Defendants knew their representations were false and intended for Plaintiff to act on such false representations.

As to his own knowledge, given that Plaintiff chose to deposit large sums into the accounts, and to maintain large balances in them (Dkt. No. 1 ¶¶ 77–78), it is also plausible that Plaintiff was ignorant to the falsity of Defendants' representations.

Thus, Plaintiff sufficiently alleges elements four, five, and six.

(iii) Plaintiff sufficiently pleads reliance, his right to rely, and damages.

"Generally, when there is a positive, distinct, and definite representation, the representee has no duty to investigate the truth of the representation."  *Westby v. Gorsuch*, 50 P.3d 284, 293 (Wash. Ct. App. 2002).  The recipient of a representation of material fact has a right to rely on that

representation "unless 'its falsity is obvious to his senses [], or he has reason to know of facts which then make his reliance unreasonable." *Id.* (citing Restatement (Second) of Torts § 541A cmt. a). Here, Plaintiff had no reason to believe that Defendants' representations were false and therefore had the right to rely on them. And Plaintiff did in fact rely on Defendants' representations by opening and maintaining his accounts. Given that Plaintiff has been unable to access the funds in his accounts, Plaintiff has sufficiently pleaded that he was damaged by reliance on Defendants' false representation.

Finally, as required by Rule 9(b), Plaintiff has sufficiently identified the role that each Defendant played in the fraudulent scheme. Namely, that Epik held itself out as offering escrow services, while Epik and Masterbucks transferred funds from Plaintiff's Epik account to his Masterbucks account, which Plaintiff has been unable to access. As to those funds, Monster reassured Plaintiff that the funds would be returned to him, but never followed through. And Plaintiff asserts that all three Defendants used Plaintiff's funds to advance their own interests.

In sum, the fraudulent misrepresentation claim is sufficiently pleaded.

### b. *Plaintiff sufficiently alleges an unjust enrichment claim.*

Plaintiff brings a claim of unjust enrichment against all Defendants. "Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). To state a claim for unjust enrichment, Plaintiff must allege that: (1) he conferred a benefit upon Defendants, (2) at his expense, and (3) the circumstances make it unjust for Defendants to retain the benefit without payment. *See id.*

Plaintiff sufficiently alleges that Masterbucks is currently holding significant amounts of money and cryptocurrency at Plaintiff's expense and has refused to return it, thus establishing a claim for unjust enrichment. Dkt. No. 1 ¶¶ 42, 45, 59, 66. Plaintiff also alleges that Masterbucks

and Epik transferred his assets between one another without authorization (*id.* ¶ 68), and that Epik has wrongfully benefitted from Plaintiff's assets. *Id.* ¶¶ 42, 45, 52, 57, 62, 66. And Plaintiff alleges that Monster made "false representations to Plaintiff and other consumers promising to repay funds Defendants misappropriated and were in the process of misappropriating in order to delay efforts to recover their funds to hide the fraudulent scheme and complete the misappropriation of the funds." *Id.* ¶ 95(a)(ii). Finally, Plaintiff asserts that despite requesting the return of his funds, all three Defendants have retained Plaintiff's funds and used them to advance their own interests. *Id.* ¶ 103. Accordingly, Plaintiff sufficiently alleges an unjust enrichment claim.

          *c.*     <u>*Plaintiff sufficiently alleges a claim of conversion.*</u>

"Under Washington law, conversion is the act 'of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of possession of it.'" *Ilyia v. El Khoury*, No. C11-1593RSL, 2013 WL 5441352, at *3 (W.D. Wash. Sep. 27, 2013) (quoting *PUD of Lewis County v. WPPSS*, 705 P.2d 1195, 1211 (Wash. 1985)). "Money may be the object of a conversion claim if it is wrongfully received by defendant, or if defendant is under an obligation to return the money to plaintiff." *Id.* (citing *Westview Inv., Ltd. v. U.S. Bank Nat. Ass'n*, 138 P.3d 638, 646 (Wash. Ct. App. 2006)). "'Wrongful intent is not an element of conversion[.]'" *Id.* (quoting *Brown ex rel. Richards v. Brown*, 239 P.3d 602, 610 (Wash. Ct. App. 2010)).

Plaintiff sufficiently alleges that Masterbucks wrongfully controls his assets and that Epik, as shown through the allegations of unauthorized transfers with Masterbucks, has "the ability to obtain custody, control, or possession" of his assets. *Id.* Further, Monster's promise to return the funds to Plaintiff suggests that he, too, has control over Plaintiff's assets. Dkt. No. 1 ¶ 95(a)(ii). Finally, Plaintiff alleges all three Defendants engaged in "a common fraudulent scheme so that

ORDER GRANTING IN PART AND DENYING IN PART DEFAULT JUDGMENT - 10

Monster, Epik, and Masterbucks could wrongfully spend Plaintiff's funds on themselves and the Epik enterprise, conceal the fraudulent scheme, and abscond with the funds and profits." *Id.* ¶ 96. Because Plaintiff has alleged that all three Defendants unlawfully asserted control over his funds and have refused to repay them, Plaintiff sufficiently pleads a conversion claim.

> d. *Plaintiff sufficiently alleges a CPA claim.*

Plaintiff alleges violations of the Washington CPA by all Defendants. Dkt. No. 1 ¶¶ 110–114. "To prevail on a CPA claim, 'the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation.'" *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 857 (W.D. Wash. 2023), *aff'd*, No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024) (quoting *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 889 (Wash. 2009)). Plaintiff alleges Defendants engaged in unfair or deceptive practices by "fraudulently converting (from one currency to another, and back), holding, and refusing to furnish Plaintiff's earnings from his sale of domains." Dkt. No. 28 at 10; Dkt. No. 1 ¶¶ 19, 21–26. The Court finds Plaintiff alleges sufficient facts, accompanied by exhibits, to meet Rule 9(b)'s heightened standard for allegations of fraud. *See* Dkt. No. 1 ¶¶ 33–69, *id.* at 20–47. Defendants' alleged acts occurred in trade or commerce and, as discussed above, caused injury to Plaintiff's property. *Id.* ¶¶ 33–69, 111. Plaintiff also sufficiently alleges these acts affect the public interest, meaning there is a "likelihood that additional plaintiffs have been or will be injured in exactly the same fashion[.]" *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 538 (Wash. 1986); Dkt. No. 1 ¶ 112. Specifically, Plaintiff alleges other individuals have been unable to withdraw money from their accounts (Dkt. No. 1 ¶ 32) and cites articles outlining Epik's "financial mess" (*id.* ¶ 28 n.2). Because Plaintiff sufficiently alleges that Defendants have likely injured others through their fraudulent transfers and withholdings, the CPA claim is sufficiently pleaded.

ORDER GRANTING IN PART AND DENYING IN PART DEFAULT JUDGMENT - 11

e.   *Plaintiff sufficiently pleads a replevin claim for his BTC.*

Plaintiff asserts a claim for replevin against all Defendants. Dkt. No. 1 ¶¶ 115–119. In Washington, a claim for replevin requires four elements:

> (a) That the plaintiff is the owner of the property or is lawfully entitled to the possession of the property by virtue of a special property interest, including a security interest ...;
> (b) That the property is wrongfully detained by defendant;
> (c) That the property has not been taken for a tax, assessment, or fine pursuant to statute ...; and
> (d) The approximate value of the property.

WASH. REV. CODE § 7.64.020(2); *BMO Harris Bank N.A. v. Miller Transp. LLC*, No. C20-148 RSM, 2021 WL 1338478, at *2 (W.D. Wash. Apr. 9, 2021) (awarding replevin on default judgment). Plaintiff alleges he owns the BTC, and that Defendants are wrongfully detaining the BTC. Plaintiff alleges the value of the wrongfully detained property in terms of BTC. Dkt. No. 1 ¶¶ 45–50. Plaintiff further alleges that the property was taken in furtherance of Defendants' fraudulent and unlawful scheme, *see, e.g.*, *id.* ¶¶ 45–52, such that it was not taken for a tax, assessment, or fine pursuant to statute. In November 2022, Plaintiff requested to withdraw the BTC—a request still marked as "pending" at the time Plaintiff filed this lawsuit. *Id.* ¶ 48. Despite Plaintiff demanding Defendants return the BTC, Defendants have refused to do so. *Id.* ¶¶ 49, 16 (BTC "are currently being held by Defendants."). Thus, taking his allegations as true, Plaintiff sufficiently alleges a replevin claim against Defendants.

f.   *Plaintiff fails to plead a breach of contract claim against Epik and Monster.*

Plaintiff brings a breach of contract claim against Defendants Epik and Monster, alleging generally that they breached their agreements with him when they failed to release his funds to him upon his request. Dkt. No. 1 ¶¶ 70–75. In Washington, a breach of contract claim requires a plaintiff to show proof of a valid contract, a breach, and resulting damages. *See Lehrer v. Dept. of*

*Soc. and Health Servs.*, 5 P.3d 722, 727 (Wash. Ct. App. 2000). And under this district's local rules, for default judgment "based on a contract, plaintiff shall provide the court with a copy of the contract and cite the relevant provisions." Local Civil Rules W.D. Wash LCR 55(b)(2)(A). Plaintiff fails to identify or provide any contract between himself and either Epik or Monster. The breach of contract claim is thus insufficiently pleaded and Plaintiff is not entitled to default judgment on this claim.

### g. *Plaintiff fails to plead a breach of fiduciary duty claim.*

In Washington, a breach of fiduciary duty claim requires four elements "(1) existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately caused the injury." *Priv. Client Fiduciary Corp. v. Chopra*, No. C22-436, 2023 WL 2372917, at *6 (W.D. Wash. Mar. 6, 2023) (quoting *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 40 P.3d 1206, 1217 (Wash. Ct. App. 2002)). Plaintiff alleges Defendants owed him a fiduciary duty as "escrow agents" and violated this duty because "[o]n information and belief, Plaintiff's funds were never placed in and were not maintained in a separate escrow account." Dkt. No. 1 ¶ 90, Dkt. No. 28 at 7–8. While the Court agrees that "escrow agents" may owe fiduciary duties in certain circumstances, "[a]n 'escrow agent's duties and limitations are defined … by his instructions.'" *Kazman v. Land Title Co.*, No. C11-1210 RSM, 2012 WL 4336727, at *6 (W.D. Wash. Sep. 21, 2012) (quoting *Denaxas v. Sandstone Court of Bellevue, L.L.C.*, 63 P.3d 125, 129 (2003)). Plaintiff alleges only Epik "purported to act as an escrow agent[,]" undermining any claim against Monster or Masterbucks for breach of fiduciary duty. Dkt. No. 1 ¶ 19. And Plaintiff's allegation that Epik was acting as an escrow agent by hosting a website that sells domain names, without any more supportive factual allegations, is conclusory and insufficient to warrant default judgment. Even if Plaintiff sufficiently alleged that each Defendant were acting as his escrow agent, Plaintiff identifies no escrow instructions.

ORDER GRANTING IN PART AND DENYING IN PART DEFAULT JUDGMENT - 13

Thus, Plaintiff is not entitled to default judgment on this claim.

        h.     *<u>Plaintiff fails to sufficiently allege a RICO claim based on wire fraud against all Defendants.</u>*

RICO provides for both criminal and civil liability. The civil remedies provision of RICO permits "[a]ny person injured in his business or property" by reason of a violation of RICO's substantive provisions to bring a civil action for damages. 18 U.S.C. § 1964(c). RICO's substantive provisions take aim at "racketeering activity," which the statute defines as a number of specific criminal acts under state and federal and laws, including federal wire fraud (18 U.S.C. § 1343). 18 U.S.C. § 1961(1). To allege a RICO violation, Plaintiff must assert, among other things, a pattern of racketeering activity. *See* 18 U.S.C. § 1962(a)–(d); *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). A "'pattern of racketeering activity' requires at least two acts of racketeering activity[.]" 18 U.S.C. § 1961(5).

Plaintiff alleges Defendants engaged in the following acts of wire fraud that support a pattern of racketeering activity: "Defendants used wire transmissions to transmit false or fraudulent representations regarding its services, including by mail and through the Epik website, to obtain money that was transferred by means of wire transmission[;]" and "Monster made false representations to Plaintiff and other consumers promising to repay funds Defendants misappropriated" through email and text messages. Dkt. No. 1 ¶ 95. Plaintiff fails to identify the specifics of the "time, place, or nature of the alleged communications[.]" *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (reversing district court's entry of default judgment on RICO claim based on mail fraud). Allegations of wire fraud must be pleaded with sufficient particularity under Rule 9(b) and require "specifics of time, place, [and] nature of the alleged communications[.]" *Id.* The Ninth Circuit has warned these "pleading requirements should be enforced strictly when default judgments are sought under RICO." *Id.* at 1393. Plaintiff

fails to meet Rule 9(b)'s requirement for particularity and fails to allege "*at least* two distinct acts of racketeering[.]" *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987) (awarding default judgment on RICO when "the evidence presented at the default hearing reveal[ed] that [defendant] engaged in at least thirteen acts of fraud, clearly related, with similar purposes, results, participants, victims, and methods of commission").

Plaintiff is not entitled to default judgment on his RICO claim.[2]

In sum, the second and third *Eitel* factors weigh in favor of entering default judgment as to all Defendants on the following claims: fraudulent misrepresentation, unjust enrichment, conversion, violation of the CPA, and replevin.

The Court will analyze the remaining *Eitel* factors to determine the appropriateness of entering default judgment on these claims.

2. <u>Plaintiff will be prejudiced absent default judgment.</u>

For the first *Eitel* factor, the Court analyzes the possibility of prejudice to Plaintiff. Prejudice exists when "the plaintiff has no recourse for recovery other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citation modified). In this case, Defendants have failed to respond to or otherwise defend against Plaintiff's complaint despite being notified of its pendency in multiple ways. *See* Dkt. Nos. 6–9, 17, 24. Without a default judgment, Plaintiff will have no recourse. Therefore, the Court finds the first *Eitel* factor favors a default judgment.

---

[2] Even though the Court finds the sole federal claim insufficiently pleaded, the Court exercises its discretion under 28 U.S.C. § 1367(c)(3) and retains supplemental jurisdiction over the remaining claims because "factors of judicial economy, convenience, and fairness to the parties strongly point toward retaining jurisdiction and no novel or complicated issue of state law is involved." *Snell v. Washington*, No. 3:20-CV-06028-JHC, 2023 WL 3004619, at *7 (W.D. Wash. Apr. 19, 2023) (citing *Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 926 (9th Cir. 2003)).

ORDER GRANTING IN PART AND DENYING IN PART DEFAULT JUDGMENT - 15

3. <u>The sum of money at stake is proportional to the harm caused by Defendants and weighs in favor of default judgment.</u>

For the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). The Court also assesses whether the amount of monetary damage requested is proportional to the harm caused by the defendant. *See Curtis*, 33 F. Supp. 3d at 1212. Plaintiff seeks the return of money and cryptocurrency wrongly retained by Defendants. Thus, the sum of money at stake is directly proportional to the alleged harm caused by Defendants, and this factor weighs in favor of default judgment.

4. <u>The lack of factual disputes favors default judgment.</u>

For the fifth *Eitel* factor, the Court considers the possibility of dispute concerning material facts. *Eitel*, 782 F.2d at 1471–72. Upon default, a plaintiff's factual allegations in the complaint will be taken as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Where, as here, "a plaintiff has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment." *Curtis*, 33 F. Supp. 3d at 1212 (citation modified). Thus, the fifth *Eitel* factor also favors default judgment.

5. <u>The lack of excusable neglect favors default judgment.</u>

For the sixth *Eitel* factor, the Court assesses whether Defendants' default was due to excusable neglect. Plaintiff served Defendants with the complaint and the order of default but Defendants have not responded. *See* Dkt. Nos. 6–9, 17, 24. The Court finds that the sixth *Eitel* factor favors entry of a default judgment. *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010).

ORDER GRANTING IN PART AND DENYING IN PART DEFAULT JUDGMENT - 16

6. The preference for resolution on the merits weighs against entry of default.

For the seventh *Eitel* factor, the Court addresses the strong policy preference in favor of resolution of Plaintiffs' claims on the merits. *See Eitel*, 782 F.2d at 1472 ("Cases should be decided upon their merits whenever reasonably possible."). While this factor "almost always disfavors the entry of default judgment, it is not dispositive." *Curtis*, 33 F. Supp. 3d at 1213 (citation modified). A defendant's "failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo,* 238 F. Supp. 2d at 1177. Previously, Epik and Masterbucks appeared in a separate lawsuit within this district when served at the same address used to effectuate service in this case. *See Adkisson v. Epik Holdings Inc, et al.*, 2:23-cv-0495-LK, ECF Nos. 5–7. That they have not appeared in this case further demonstrates that it is unlikely that Plaintiff's claims can be resolved on the merits. Thus, although the Court's preference for resolving issues on their merits weighs against entry of a default judgment, this factor is outweighed by the other *Eitel* factors, as summarized above. Accordingly, the Court finds that Plaintiffs' motion for default judgment should be granted against all Defendants for fraudulent misrepresentation, unjust enrichment, conversion, violation of the CPA, and replevin.

D. **Plaintiff Is Entitled to Damages and Return of BTC.**

Because the Court finds the *Eitel* factors weigh in favor of entry of default judgment, the Court now considers whether Plaintiff is entitled to damages. Unlike for liability, the Court does not consider defaulting defendants to have admitted the allegations concerning damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). The Western District of Washington also requires a party seeking default judgment to provide "a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought." LCR 55(b)(2). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

ORDER GRANTING IN PART AND DENYING IN PART DEFAULT JUDGMENT - 17

Plaintiff seeks a "money judgment in the amount of $1,368,217.76" and the return of "5.18836095 BTC" "jointly and severally" from Defendants. Dkt. No. 28 at 14, Dkt. No. 28-3, Dkt. No. 1 at 18.

1. Amount of damages

Under the CPA and unjust enrichment, Plaintiff is entitled to his actual damages or full restitution, among other relief. *See* WASH. REV. CODE § 19.86.090; *Young v. Young*, 191 P.3d 1258, 1265 (Wash. 2008) (granting full restitution of unjust enrichment). Plaintiff only seeks a monetary judgment in the amount that Defendants have wrongfully retained, and Plaintiff has provided sufficient evidence of this amount. Dkt. No. 28 at 14; Dkt. No. 1 at 30 ($1,079,052.50 in the MultiBusiness Masterbucks account), 39 ($36,003.00 in the Bitextreme Masterbucks account), 45 ($253,162.26 in the Domain Empire Masterbucks account). Plaintiff is entitled to $1,368,217.76 in damages.

Under the replevin claim, Plaintiff is also entitled to the return of personal property. *See BMO Harris Bank*, 2021 WL 1338478, at *2. Plaintiff has provided sufficient evidence of the 5.18836095 BTC held in his Business Web Masterbucks account. Dkt. No. 1 at 32. Accordingly, he is also entitled to return of this property.[3]

2. Apportionment of damages

"Joint and several liability applies when there has been a judgment against multiple defendants." *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 220–221 (1994). Provided the plaintiff recovers only once for the full amount of harm, where multiple defendants contribute to a

---

[3] Replevin and conversion are "concurrent remedies for a wrongful taking of goods" in that "replevin is usually an action to recover property, whereas conversion allows recovery of the value of the property when recovery of the specific property is not possible." *OEG Inc. v. Korum*, No. 3:24-CV-05694-TMC, 2025 WL 353927, at *13 (W.D. Wash. Jan. 31, 2025) (citing *Bensch v. Dixon*, 2013 WL 6244521, at *2 n.2 (Wash. Ct. App. 2013)). Because Plaintiff seeks return of his BTC and does not allege recovery is not possible or seek the value of the BTC, the Court awards Plaintiff the relief he seeks and does not address the remedies available under conversion.

plaintiff's harm, each defendant is held liable for the entire amount of the harm.  *See* Restatement (Second) of Torts § 875 (1979).  Though joint and several liability may result in one defendant paying more than his proportional share of liability, "[w]hen [] limitations on the plaintiff's recovery arise from outside forces, joint and several liability makes the other defendants, rather than an innocent plaintiff, responsible for the shortfall."  *McDermott*, 511 U.S. at 221 (providing example of a defendant's insolvency as an "outside force" that may limit a plaintiff's recovery).

Reflecting these principles, "courts have justly imposed joint and several liability" where entities and individuals "operate as a common enterprise."  *Commodity Futures Trading Comm'n v. Aipu Ltd.*, No. 3:24-CV-5815-BHS, 2025 WL 1489729, at *10 (W.D. Wash. May 22, 2025) (citing *FTC v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1240 (11th Cir. 2017)).  Here, the defaulted Defendants acted as a common enterprise.  "Defendants worked together to provide escrow services regarding domain names and misappropriated the escrow funds."  Dkt. No. 1 ¶ 29.  Review of the account statements suggests that the entities had access to each other's accounts.  *See, e.g., id.* at 24 (showing Masterbucks account ledger with note signed "#BeEpik" and with transactions from "robmonster"), *id.* at 30 (showing Masterbucks account ledger with references to "Epik Invoice" numbers).  And Monster owns and primarily operates both Epik and Masterbucks.  *Id.* ¶¶ 5, 11.  Moreover, in this case, outside forces that could limit Plaintiff's recovery are at play.  *See McDermott*, 511 U.S. at 221.  Specifically, Plaintiff's allegations that Masterbucks is an administratively dissolved company, and Epik is a delinquent corporation, could hamper his ability to recover from either of those entities.

Thus, there is a basis for joint and several liability.

### III.  CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for default judgment.

The Court GRANTS the motion for default judgment against Monster, Masterbucks, and Epik for Plaintiff's claims of fraudulent misrepresentation, unjust enrichment, conversion, violation of the CPA, and replevin.

The Court finds Plaintiff is entitled to $1,368,217.76 from Monster, Masterbucks, and Epik, jointly and severally, with post-judgment interest at the rate provided in 28 U.S.C. § 1961.

Plaintiff is also entitled to the return of the 5.18836095 BTC held in the Business Web Masterbucks account.

The Court DENIES the remainder of the motion, and DISMISSES Plaintiff's breach of contract, breach of fiduciary duty, and RICO claims.

Plaintiff is directed to serve a copy of this Order on Defendants.

Upon entry of judgment, the Clerk is directed to close this case.

Dated this 31st day of October, 2025.

*Kymberly K. Evanson*
Kymberly K. Evanson
United States District Judge